UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CONNELLY ANDREW SCHNEIDER,

                        Plaintiff,

v.                                                      3:15-CV-0590
                                                        (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

BINDER, BINDER LAW FIRM                          CHARLES E. BINDER, ESQ.
  Counsel for Plaintiff
60 East 42nd St., Ste. 520
New York, NY 10165

U.S. SOCIAL SECURITY ADMIN.                      BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 14.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Connelly Andrew

Schneider ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 13.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on June 3, 1978. (T. 162.) He completed high school. (T. 190.) Generally, Plaintiff's alleged disability consists of knee impairment, anxiety, panic attacks, mood swings, depression, left ear injury, blackouts, insomnia, severe weight loss, muscular pain in left shoulder, and a pulmonary disorder. (T. 189.) His alleged disability onset date is April 30, 2012. (T. 83.) His date last insured is September 30, 2012. (*Id.*) He previously worked in retail, loss prevention, and as a packer. (T. 190.)

### B. Procedural History

On February 21, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 83.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 21, 2013, Plaintiff appeared before the ALJ, Jennifer Gale Smith. (T. 55-81.) On October 7, 2013, ALJ Smith issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 20-40.) On March 11, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 25-36.) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2012 and Plaintiff had not engaged in substantial gainful activity since April 30, 2010. (T. 25.) Second, the ALJ found that Plaintiff had the severe impairments of bilateral knee impairment status post right and left knee surgery, asthma, depressive disorder, mood disorder, panic disorder, anxiety, and a history of alcohol abuse. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 26-28.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work. (T. 28.)[1] The ALJ found that Plaintiff could not climb ladders, ropes, or scaffolds and could only occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*) He determined that Plaintiff should avoid concentrated exposure to dusts, odors, fumes, gases, and extremes of hot and cold. (*Id.*) The ALJ determined that mentally, Plaintiff retained the ability to understand and follow simple instructions and directions; perform simple and some complex tasks with supervision and independently; maintain attention and concentration for simple and some complex tasks; regularly attend to a routine and maintain a schedule; relate to and interact with others to the extent necessary to carry out simple tasks, with the need to avoid work involving more complex interactions or joint efforts to achieve work goals; and handle reasonable levels of simple work-related stress, in that he could make occasional decisions directly related to the completion of

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

his tasks in a stable, unchanging work environment.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was unable to perform his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 34-36.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly weigh the medical opinion evidence.  (Dkt. No. 10 at 15-20 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility.  (*Id.* at 20-23.)  Third, and lastly, Plaintiff argues the ALJ erred by relying on the Medical-Vocational Guidelines.  (*Id.* at 23-25.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the ALJ reviewed the medical record in its entirety and properly evaluated all opinion evidence.  (Dkt. No. 13 at 6-10 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly evaluated Plaintiff's credibility.  (*Id.* at 10-13.)  Third, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence.  (*Id.* at 13-15.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*,

615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla,"

and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v.

Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In

other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.        Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.        Evaluation of Medical Evidence in the Record

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff argues that the ALJ erred in affording a portion of treating physician, Aaron Garber M.D.'s, opinion great weight but rejecting a portion that assessed greater limitations. (Dkt. No. 10 at 16-18 [Pl.'s Mem. of Law].) Plaintiff further argues the ALJ erred in affording weight to the consultative examiner, Kalyani Ganesh, M.D. (*Id.* at 18-19.)

The ALJ adhered to the Regulations in evaluating the opinion evidence provided by Dr. Garber; and further, substantial evidence supported the ALJ's determination to afford a portion his opinion "great weight" and the remaining portion "little weight." (T. 32.)

On May 18, 2012 Dr. Garber completed a "Multiple Impairment Questionnaire." (T. 431-446.) Dr. Garber indicated Plaintiff's diagnosis as chronic knee pain, panic disorder, and left shoulder pain. (T. 431.) Dr. Garber stated his diagnosis was supported by X-rays of the knees and shoulder. (T. 432.)

Regarding exertional limitations, Dr. Garber stated that in an eight hour work day Plaintiff could sit for eight hours, as long as his legs were extended and elevated. (T. 433.) He stated Plaintiff could stand/walk "0-1" hours in an eight hour work day. (*Id.*) Dr. Garber opined Plaintiff could not sit continuously and would need to "get up and move around" every hour for five to ten minutes. (T. 433-434.)

Dr. Garber opined Plaintiff could occasionally lift and carry up to ten pounds, but could never lift and carry over ten pounds. (T. 434.) Dr. Garber indicated Plaintiff had no limitations in his ability to repetitively reach, handle, finger or lift; however, he opined Plaintiff had moderate limitations in his ability to grasp, turn, twist objects with his left upper extremity. (*Id.*) He also opined Plaintiff had moderate limitations in his ability for fine manipulation and reaching with his left upper extremity. (T. 435.)

When asked whether Plaintiff's symptoms would increase if he was placed in a competitive work environment and if his condition would interfere with the ability to keep his neck in a constant position, Dr. Garber checked the box indicating "yes." (T. 435.)

Dr. Garber opined Plaintiff's anxiety and depression contributed to his functional limitations. (T. 436.) He opined Plaintiff was incapable of even "low stress" work, specifically that he panics in stressful situations. (*Id.*) He opined Plaintiff would require unscheduled breaks every hour lasting five to fifteen minutes. (*Id.*) Dr. Garber opined Plaintiff would be absent more than three times a month. (T. 437.) He stated Plaintiff

could not, on a sustained basis: push, pull, kneel, bend or stoop.  (T. 437.)  He stated Plaintiff needed to avoid heights.  (*Id.*)

Dr. Garber also provided a medical source statement specifically regarding Plaintiff's lower extremities.  (T. 439-446.)  Dr. Garber indicated Plaintiff's diagnosis as "chronic knee pain," panic disorder, depression, and left shoulder pain.  (*Id.*)  Dr. Garber then provided clinical findings, test results, and symptoms which supported his diagnosis.  (T. 439-441.)  Dr. Garber opined that Plaintiff had the ability to independently initiate ambulation, but he could not sustain ambulation or "complete activity."  (T. 441.)  He stated Plaintiff needed a cane and knee braces.  (*Id.*)  He indicated Plaintiff's pain interfered with his ability to ambulate effectively, he could not climb stairs without a handrail, and he could not regularly carry out "all" activities of daily living independently without assistance.  (T. 442.)  Dr. Garber did indicate that Plaintiff could travel, prepare meals, and bath/dress without assistance.  (*Id.*)

Dr. Garber provided the same exertional limitations regarding Plaintiff's ability to sit, stand, walk, lift and carry as he did previously.  (T. 442-443.)  Dr. Garber specifically opined Plaintiff would be required to elevate both of his legs a "majority of the day" to 45 degrees of inclination to "relieve pressure."  (T. 443.)

The ALJ afforded "great weight" to Dr. Garber's "assessment of a sedentary-like restriction," however, he afforded "little weight" to Dr. Garber's "overall opinion."  (T. 32.)  The ALJ reasoned that Dr. Garber's opinion that Plaintiff could perform sedentary work was supported by Plaintiff's knee pain and restrictive movement of the knees "which would likely preclude extensive standing and walking."  (*Id.*)  The ALJ reasoned Dr. Garber's overall opinion was not entitled to more weight because the restrictions were

not supported by medical evidence in the record. (*Id.*) The ALJ specifically noted that Plaintiff's need to stretch or elevate his legs could be satisfied during breaks. (*Id.*) The ALJ reasoned that Dr. Garber's restrictions on reaching and manipulation were not supported by objective medical evidence. (*Id.*) The ALJ also determined that Dr. Garber's limitations were inconsistent with the opinion of the consultative examiner and that overall the limitations appeared to be based on Plaintiff's subjective complaints. (*Id.*)

First, the ALJ adhered to the Regulations in weighing the opinion evidence of Dr. Garber. The ALJ reasoned that the opinion was not supported by objective medical evidence and inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ recognized Dr. Garber as Plaintiff's treating source under 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). (T. 32.) The ALJ provided specific evidence in the record which he determined was inconsistent with Dr. Garber's limitations under 20 C.F.R. §§ 404.1527(c)(2)(iii), 416.927(c)(2)(iii). (*Id.*) And the ALJ provided reasoning for adopting Dr. Garber's sedentary-like restrictions under 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).

In addition, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding

that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Plaintiff argues that all the relevant factors weigh in favor of crediting Dr. Garber's findings and the ALJ's discussion of Dr. Garber's opinion was too "brief" to support his determination.  (Dkt. No. 10 at 16, 19 [Pl.'s Mem. of Law].)  However, the ALJ sufficiently laid out his reasoning for affording weight to Dr. Garber's opinion.  The ALJ accurately summarized Dr. Garber's opinion and, as outline above, provided specific reasoning for the weight he afforded to his opinion.  Although Plaintiff points to evidence in the record which he contends supports Dr. Garber's limitations, under the substantial evidence standard of review, the ALJ's findings must be sustained if supported by substantial evidence even if substantial evidence supported Plaintiff's position. *Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Second, substantial evidence supported the ALJ's determination.  Dr. Garber's opinion, that Plaintiff could not sustain full-time work activity and required elevation of his legs, unscheduled breaks, and excessive absences was not supported by the evidence in the record.  As the ALJ noted, Dr. Garber recommended that Plaintiff might benefit from vocational rehabilitations services, which was inconsistent with his opinion

that Plaintiff could not sustain full-time work. (T. 32, 450, 663, 695.)[2] The ALJ also relied on objective medical evidence which was normal except for post-operative changes. (T. 32, 257-258.) Throughout the record Dr. Garber made treatment recommendations to Plaintiff, such as resting his knee, physical therapy, and use of a cane; however, Dr. Garber did not note that Plaintiff should elevate his legs. (T. 311, 317, 653.) Dr. Garber noted in May of 2011 that Plaintiff remained out of work because he could not perform a job that required "prolonged standing" and could not work due to his anxiety. (T. 312.) Dr. Garber stated in June of 2013 that Plaintiff was unable to work because he could not ambulate and his mood disorder was still uncontrolled. (T. 653.) On September 16, 2013, Dr. Garber stated that Plaintiff "may be able to do a [sit down] job" but his mental impairments would provide limitations. (T. 646.) Therefore, substantial evidence supported the ALJ's determination to afford Dr. Garber's opinion little weight based on the objective medical evidence in the record and Dr. Garber's treatment notations.

The ALJ also provided less weight to portions of Dr. Garber's opinion because they were based on Plaintiff's subjective complaints. (T. 32.) To be sure, a doctor's reliance on subjective complaints does not undermine his opinion of a plaintiff's functional limitations. *Green-Younger v. Barnhart*, 335 F.3d 99 (2nd Cir. 2003). However, an ALJ may provide less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably be less than fully credible. *Roma v. Astrue*, 468 F.App'x 16, 19 (2d Cir. 2012).

---

[2]     To be sure, the record indicated that Dr. Garber made note that Plaintiff may benefit from vocational rehabilitation services; however, the record does not contain notations from such.

Further, Dr. Garber's limitations were inconsistent with the opinion of Dr. Ganesh. Dr. Ganesh opined that based on his examination of Plaintiff, he had moderate limitations in standing, walking or climbing, but no limitation for sitting and in the use of his upper extremities. (T. 409.)

Plaintiff essentially argues that the opinion of a consultative examiner cannot constitute substantial evidence and should be given little, if any, weight. (Dkt. No. 10 at 18 [Pl.'s Mem. of Law].) Contrary to Plaintiff's assertion, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b) (6), 416.913(c), 416.927(e). The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

Plaintiff also makes the argument that Dr. Ganesh's opinion should be afforded limited weight because he did not review Plaintiff's medical record. (Dkt. No. 10 18-19 [Pl.'s Mem. of Law].) The elements of a complete consultative examination do not require that the examiner review all, or any, medical evidence in the record. 20 C.F.R. §

404.1519n(b)-(c), 416.919n(b)-(c); *see also*, *Harper v. Comm'r of Soc. Sec.,* No. 08-CV-3803, 2010 WL 5477758, at *4 (E.D.N.Y. Dec. 30, 2010) (Commissioner was not required to provide plaintiff's current disability status to medical examiner). Therefore, the ALJ did not commit legal error in relying on a consultative examiner's opinion where the examiner did not review the medical evidence in the record, because a consultative examiner is not required to review the record in order to provide a complete examination.

For the reasons stated herein, and further outlined in Defendant's brief, the ALJ did not err in affording great weight to a portion of Dr. Garber's opinion and little weight to his overall opinion and the ALJ did not err in weighing the opinion of the consultative examiner. The ALJ adhered to the Regulations in his analysis and his determination was supported by substantial evidence and therefore remand is not recommended.

**B.    Credibility Determination**

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96–7p; *Genier*, 606 F.3d 46, 50 (2d Cir. 2010). First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely credible. (T. 29.) The ALJ further concluded that Plaintiff's allegations lacked credibility because they were inconsistent with objective medical evidence, there was a

lack of significant psychological testing and treatment, and Plaintiff had a "lackluster" work history.  (T. 31.)

Plaintiff argues the ALJ erred in his credibility determination because there was objective medical evidence to support Plaintiff's testimony that he needed to elevate his legs.  (Dkt. No. 10 at 21 [Pl.'s Mem. of Law].)  Plaintiff also argues the ALJ erred in his conclusion that a lack of psychiatric treatment was an indication that his mental impairments were not as limiting as alleged.  (*Id.* at 21-22.)  Finally, Plaintiff argues the ALJ erred in his evaluation of Plaintiff's activities of daily living.  (*Id.* at 22-23.)  For the reasons state herein, and further outlined in Defendant's brief, the ALJ's credibility determination was proper and supported by substantial evidence.

First, as outlined in Part IV.A., the ALJ properly concluded that the objective medical evidence did not support Plaintiff's assertion that he had to elevate his legs. Therefore, the ALJ did not err in concluding that Plaintiff's allegations regarding his need to elevate his legs was not supported by the record.

Second, the ALJ did not err in his conclusion that Plaintiff's lack of psychological testing and treatment detracted from his credibility.  (T. 31.)  To be sure, an ALJ must not draw an adverse inference from a plaintiff's failure to seek or pursue treatment.  *See* SSR 96-7p (S.S.A. July 2, 1996).[3]  However, courts have held that failure to seek treatment can undermine allegations of a disabling condition.  *Navan v. Astrue*, 303 F.

---

[3]     SSR 96-7p was superseded by SSR 16-3p which went into effect on March 16, 2016, well after the ALJ's decision in this case.  SSR 16-3p, like SSR 96-7p, states "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  SSR 16-3p (S.S.A. Mar. 16, 2016).

App'x 18, 20 (2d Cir. 2008) (the ALJ appropriately relied on the near absence of any medical records to find that plaintiff's claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition). Further, any error the ALJ may have committed in relying on Plaintiff's lack to treatment was harmless because there was substantial mental health evidence in the record to support the ALJ's determination. The record indicated Plaintiff's depression was stable in 2010 (T. 331), Plaintiff responded well to mental health treatment (T. 306, 309), and the consultative examiner noted in 2013 that Plaintiff's mental impairments did not prevent him from performing basic mental demands of unskilled work. (T. 586-589, 590-594.)

The ALJ also properly relied on Plaintiff's work history and activities of daily living in making his credibility determination. An ALJ may consider a plaintiff's poor work history in making his overall credibility determination. *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). Further, the ALJ accurately described Plaintiff's reported activities of daily living and concluded those activities diminished his credibility. (T. 31.) Plaintiff's testimony regarding his activities was inconsistent. He reported he spent most of his day inside elevating his legs and needed assistance getting dressed and showered. (T. 73-74.) However, he also reported he could cook, shop, groom, shower, drive and dress himself. (T. 407, 592.) The record also indicated that Plaintiff's complaints of pain were exaggerated. During an examination a nurse observed that Plaintiff sat in a chair with his legs outstretched straight and crossed at the ankles without apparent discomfort. (T. 677.) She further observed that Plaintiff had exaggerated pain on movement which was inconsistent with clinical findings and history. (*Id.*) The nurse also observed that upon leaving the examination room Plaintiff

moved quickly down the hall using his cane.  (*Id.*)  The ALJ properly considered

Plaintiff's activities of daily living in making his overall credibility determination.

Therefore, the ALJ properly evaluated Plaintiff's credibility and it is recommended

that his credibility determination be affirmed.

### C.    Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two

part process to first assess Plaintiff's job qualifications by considering his physical

ability, age, education, and work experience, and then determine whether jobs exist in

the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct.

1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally

satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth

at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the

"Grid").  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if

a non-exertional limitation "has any more than a 'negligible' impact on a claimant's

ability to perform the full range of work."  *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.

2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir. 2010)).  A non-exertional

impairment is non-negligible "when it ... so narrows a claimant's possible range of work

as to deprive him of a meaningful employment opportunity."  *Zabala,* 595 F.3d at 411.

Whether VE testimony is required must be determined on a "case-by-case basis."  *Bapp*

802 F.2d at 605-06.  Further, "the mere existence of a non-exertional impairment does

not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

At step five the ALJ determined that given Plaintiff's age, education, work experience and RFC there were a significant number of jobs in the national economy that Plaintiff could perform based on the Grids. (T. 34-35.) Plaintiff argues the ALJ erred in his reliance on the Grids because Plaintiff had significant non-exertional limitations which required the testimony of a vocational expert. (Dkt. No. 10 at 23-25 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the limitations listed in the "psychiatric review technique" form would preclude use of the Grids. (*Id.*)

The Regulations provide for a "special technique" for the evaluation of mental impairments when assessing a plaintiff's mental impairments at step two and three of the process. 20 C.F.R. §§ 404.1520, 416.920. However, the special technique, and the limitations therein, are not an RFC assessment, but are used to rate the severity of mental impairments at steps two and three. *See* 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). Therefore, the ALJ did not err in his assessment of Plaintiff's mental limitations by not including the specific results of the psychiatric review technique form.

The ALJ performed a separate, and proper, mental RFC analysis in which he determined Plaintiff retained the ability to understand and follow simple instructions and directions, perform simple and some complex tasks with some supervision and independently, maintain attention and concentration for simple and some complex tasks, regularly attend to and maintain a schedule, relate to and interact with others to the extent necessary to carry out simple tasks, while avoiding work involving more

complex interactions or joint efforts to achieve work goals, and handle reasonable levels of simple work-related stress. (T. 28.)[4]

The ALJ's reliance on the Grids was proper. The ALJ's mental RFC did not provide limitations which would preclude unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. SSR 85-15 (S.S.A. 1985). Plaintiff argues that the ALJ's determination that Plaintiff must avoid work involving more complex interaction or joint efforts and Plaintiff could not handle changes in the work environment were not negligible. (Dkt. No. 10 at 25 [Pl.'s Mem. of Law].)

The ALJ determined that Plaintiff could handle work-related stress in a "stable, unchanging work environment." (T. 28.) This limitation is not inconsistent with unskilled work. An "unchanging" work environment is synonymous with a routine work environment. Routine is defined as "done or happening as a normal part of a job, situation, or process; easily done according to a set way or method." *Merriam Webster Dictionary*, http://www.merriam-webster.com/dictionary/routine. Therefore, a determination that Plaintiff could handle the stress that accompanies a stable, unchanging work environment is consistent with the ability to deal with changes in a routine work setting.

In a similar case from this district, a court determined that an ALJ did not err in relying on the Grids because the mental RFC determination "essentially mirror[ed] the Ruling's parameters of mental capacity for unskilled work" were plaintiff had the RFC to:

_____

[4]     Plaintiff does not argue the ALJ erred in his mental RFC determination.

relate and interact with others to the extent necessary to carry out simple tasks, but had to avoid work requiring more complex interaction or joint effort to achieve work goals and could handle reasonable levels of simple work-related stress in that he could make occasional simple decisions directly related to the completion of his tasks in a stable, unchanging work environment, reasoning that such limitations

*Dillingham v. Colvin*, No. 5:14-105, 2015 WL 1013812, at *12 (N.D.N.Y. Mar. 6, 2015).

Therefore, a limitation to the ability to handle a reasonable level of stress in a stable and unchanging work environment is consistent with the demands of unskilled work which includes the ability to deal with changes in a routine work setting. Further, the RFC limitation, that Plaintiff must avoid complex interaction or joint effort, is also consistent with the demands of unskilled work. Unskilled work requires the ability to "respond appropriately to supervision, coworkers, and usual work situations," Plaintiff retained the ability to perform this requirement. Therefore, Plaintiff's mental RFC limitations did not prevent him from performing the basic mental demands of unskilled work and the ALJ did not err in relying on the Grids in making his step five determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:        August 26, 2016

_____

William B. Mitchell Carter
U.S. Magistrate Judge